GEORGE W. WRIGHT, APPELLANT, VS. J. W. TERRY, APPELLEE.

1. In order that a promise made by one person to another for the benefit of a third person shall constitute the first the debtor of the third and entitle the third person to sue the first on such promise, it must appear that there was a clear intent upon the part of both the first and the second that the first person shall become such debtor. The mere fact that the third might be benefited is not sufficient.

2. The common law lien of a bailee does not, as against the bailor, extend to employes of the former for their labor.

3. The act of 1875, entitled "an act to protect laborers and lumbermen," section 39, p. 729, McClellan's Digest, gives a lien only to laborers or contractors with whom the owner of the logs or lumber contracts, and not to employes of a person contracting with such owner who are not employes of the owner.

4. Terry and Wright entered into a written contract for a "drive," by the terms of which the former was to take the latter's logs at a certain point in a river and deliver them to Wright's steamboat at the head of a certain bay into which it flows at $1 per M, and,

George W. Wright v. J. W. Terry—Statement of Case.

to meet contingencies, Wright was to supply provisions and money, the money to pay off the men that might be got rid of, and not to exceed $200. "All other men to be paid off by Wright or his agent at the end of the drive." Wright is to have the right to follow up drive and see that it was a clean up, and the whole drive, except such logs as could be identified as the property of other persons, to belong to Wright; *Held:*

(*a.*) The contract did not constitute Terry an agent of Wright to employ men for the latter, and that the men employed by Terry in connection with the "drive" were his own, and not Wright's employes.

(*b.*) The provisions and the money to pay off the men to "be got rid of" were to be charged to Terry and could be credited on the amount payable by Wright to Terry for the performance of his undertaking.

(*c.*) The purpose and legal effect of the provision for payment of men "at the end of the drive" was to authorize Wright to pay them and charge the amount to Terry, and thereby protect himself, if he so desired, from any annoyance that might arise from Terry's not paying them, but it did not render Wright liable to such men for their pay, even though they may have known of such provision before they were employed by Terry.

(*d.*) The contract did not give the employes of Terry a lien on the logs for their labor or wages.

Appeal from the Circuit Court for Escambia county.

The following is the contract referred to in the opinion:

"PENSACOLA, FLA.

"CONTRACT WITH N. B. TERRY FOR NEXT DRIVE.

"N. B. Terry will take the logs on Pea or Choctawhatchie river in good driving water and deliver to steamboat at head of Choctawhatchie bay, leaving no logs behind, at one dollar *per* M.

"To meet contingencies G. W. Wright will supply provisions and money, the money to pay off men that may be got rid of. Money for this purpose not to exceed two hundred dollars.

12

"All other men to be paid off by G. W. Wright, or his agent, at the end of the drive.

" G. W. Wright to have the right to follow up drive and see that it is a clean up.

(Signed) " N. B. TERRY.

" It is a condition of this contract that the whole drive belongs to G. W. Wright, except logs that can be identified as the property of other persons.

" All logs put into the drive by other persons will be notified by Mr. Terry that he takes them with the condition that G. W. Wright is to have the refusal of such logs when they are ready for sale and delivery.

(Signed) " G. W. WRIGHT,
" N. B. TERRY."

The other facts of the case are sufficiently stated in the opinion.

*W. A. Blount* for Appellant.

*Maxwell & Mallory* for Appellee.

Did Terry hold a lien on the logs which authorized him to hold them till paid for his labor expended on them ? He certainly had a lien under the statute of this State. Mc-Clellan, 729. We claim also that he had a common law lien, and that the remedy provided by the statute was only cumulative, and did not affect his common law right to hold the property for his debt.

Did Terry have a common law lien ? Kent (vol. 2, 634-5, marginal,) defines that lien thus: " A *general* lien is the right to retain the property of another for a general balance of accounts ; but a *particular* lien is a right to retain it only for a charge on account of labor employed, or expenses bestowed on the identical property detained. The former is taken strictly, but the latter is favored in law. The right

rests on principles of natural equity and commercial necessity, and it prevents circuity of action and gives security and confidence to agents." * * " It is now the general rule that every bailee for hire, who, by his skill and labor has imparted an additional value to the goods, has a lien upon the property for his reasonable charges."

".Every bailee for hire has a lien on the thing for the amount of his compensation, and therefore he is not unless it is specially otherwise agreed, bound to restore the thing bailed until that compensation is paid." Story on Bailments, 440.

" A lien at common law signifies the right of detention in persons who have bestowed labor upon an article or done some act in reference to it, and who have this right of detention till reimbursed for their expenditure and labor." 24 Maine R., 219.

" In modern times the right (of lien) has been extended so far that it may be laid down as a general rule that every bailee for hire, who by his labor and skill has imparted an additional value to the goods, has a lien upon the property for his reasonable charges. This includes all such mechanics, tradesmen and laborers as receive property for the purpose of repairing or otherwise improving its condition." Grinnell vs. Cook, 3d Hill, 485. See also Addison on Torts, §§509, 611 ; Moore vs. Hitchcock, 4th Wend., 292 ; Morrants vs. Williams, 11th Wend., 77 ; Morgan vs. Congdon, 4th N. Y. R., 552, and 2d Denio, 628, and 26 Wend., 467.

From these authorities it will be seen that the courts do not restrict the lien to the particular employment mentioned in the old books, but apply it wherever the reason of the rule applies. Terry's case comes under this rule, if his charge of the logs was under Wright for the purpose of bestowing labor on and about them, which gave them additional value. We think it unquestionable that if

Wright had himself directly employed Terry to drive the logs, the lien would have attached.

But it is contended that Terry was a sub-employe of N. B. Terry under a contract between the latter and Wright for the driving of the logs, and that as such sub-employe, no lien of the kind claimed could arise. An examination of the contract will show that Wright was to pay the men employed by N. B. Terry, so that as to those men N. B. Terry was but the agent of Wright, and their employment by him was, in effect, employment by Wright. That N. B. Terry so understood the contract is apparent from the fact that in employing the men he expressly brought to their attention the stipulation that Wright was to pay them. They were not his employes, because the consideration for their employment did not proceed from him, but from Wright, and proceeded from Wright by his express agreement, which could have no other character than that of constituting him (Terry) agent for the purpose. Applying this test, we think it clear that the labor of this plaintiff was labor for Wright and not for Terry.

The rule of law which denies to the employe of an artisan or mechanic a lien on personal property, of which such artisan or mechanic has possession in order to repair said property or do work to impart additional value to it, does not apply to this case ; for then the employe is working for and on the credit of his employer, and not for, or on the credit of, the owner of the property. Here the employes were working on the credit of Wright, and by his express contract to that end—a distinction which places them in relation to him very different from that of the employes of an ordinary contractor for labor, and a relation that can have no other meaning than such as constitutes him the principal in an employment he has authorized, and authorized in a way which assumes responsibility for the employment to him-

self.. Can it be that the law will permit the holding out of inducements to a common laborer to accept employment and afterwards, when the labor is performed, tolerate repudiation of the employment and of the obligation resulting from such inducements? The genius of a Mansfield, if there were occasion for it, would have little difficulty in adapting the law to the justice of such a case.

The fact that the State gives the plaintiff, Terry, a lien, makes no dfference in the case. He is not restricted to the remedy given by that statute, if he has a common law lien, because the remedy given is only cumulative. There is a statute which provides a remedy in other cases, where clearly a common law lien exists (McClellan, 723, sec. 10,); but this would not confine a party having such lien to the remedy there given. He could. undoubtedly retain the property as authorized by common law lien, till the owner comes forward to pay. Is there any reason why the same rule should not apply here? If the plaintiff had possession of the logs, actual or constructive, and had done labor on them which gave him a lien, and if the defendant, through his agent, forcibly deprived him of that possession, taking and carrying them away, all of which we think shown by the evidence in the record, he had a clear case for his action of trespass, and the verdict and judgment should stand. See 1st Chitty's Pleadings (Ed. '83), 246, 250, bottom page.

We have not commented on each particular assignment of error, for the reason that if we have given the law applicable to the case correctly, and our view of the evidence should be found correct, the errors assigned fall to the ground, except perhaps in unimportant and immaterial matters, which should not affect the just general result.

MR. JUSTICE RANEY delivered the opinion of the court:

It is contended by counsel for the appellee, J. W. Terry, that Wright was to pay the men employed by N. B. Terry; that as to these men N. B. Terry was but the agent of Wright, and their employment by N. B. Terry was in effect employment by Wright; that the consideration for their employment did not proceed from N. B. Terry, but from Wright, and proceeded by his express agreement, which could have no other character than that of constituting him agent for the purpose; that appellee and his co-employes were working on the credit of Wright, and by his express contract to that end, Wright being the principal in an employment authorized by himself in a way which assumed responsibility to himself.

Is this so ? Considering the contract we understand its meaning and effect to be that N. B. Terry undertakes to drive the logs from a point on Pea or Choctawhatchie river in good driving water and deliver them to Wright's steamboat at the head of Choctawhatchie bay; that the compensation to be paid by Wright to N. B. Terry for the performance of this undertaking was at the rate of one dollar per thousand feet. This, the first paragraph shows to be the real undertaking to be performed by N. B. Terry, and the amount of the compensation for each thousand feet so driven and delivered to be paid him by Wright. The second paragraph provides that Wright will, to meet contingencies, supply provisions and money, the latter to be supplied to pay off men that may be got rid of, and the amount of it not to exceed $200. These men we understand to be such as may be got rid of on the trip down the river, or before the end of the drive was reached.

The provisions and money to be supplied under the sec-

ond paragraph were to be supplied by Wright to facilitate or enable Terry to meet the contingencies requiring provisions and those requiring money, as indicated, which might arise in the performance by Terry of his undertaking, and they, both provisions and money, were to be credited on whatever might be payable by Wright to Terry under the first clause. The third clause: "All other men to be paid off by G. W. Wright, or his agent, at the end of the drive," was inserted for the benefit of Wright, and its effect was to give him the privilege of paying off the " men " it refers to, and such payments were to be charged against Terry, but its effect was not to make Wright the employer or debtor of such men, nor liable in any event for more than N. B. Terry could claim under the first paragraph. The purpose was to secure Wright against any annoyance or damage which might come from the men not being paid by Terry, and it may be that both of them considered that the men might under the statutes have, or attempt to assert, a lien on the logs for their wages, and the convenience it would be to Terry for Wright to have the money at the end of the drive and pay off the men may also have been within the actual contemplation of the parties. There is nothing, however, in the agreement which indicates to our minds that the men were to be the employes of Wright. It is on the contrary plain that " the drive " from the starting point on Pea or Choctawhatchie river to the head waters of the Choctawhatchie bay was to be the undertaking to be performed by N. B. Terry, and to be controlled by him without any interference by Wright, other than that Wright could "follow up the drive and see that it was a clean up," and this provision did not render the undertaking of Terry less a bailment for hire, to be performed by him upon his own responsibility. There is moreover nothing in the contract which constitu-

ted N. B. Terry the agent of Wright to hire men on Wright's responsibility as a principal. Such idea is both inconsistent with the undertaking of Terry, and the fact that the amount of the entire consideration payable by Wright is at the rate stated in the first paragraph. The subsequent paragraphs do not change the amount or rate of compensation.

The language of the third paragraph is not such as indicates a purpose on the part of Wright to bind or render himself liable to the hands it refers to for what might be due them. If its purpose had been to make him the debtor of these men, not only would it, in view of the former provisions of the paper, have heen more specifically expressed, but the provision as to his agent would not have been inserted. If this clause can, in view of the rest of the contract, be construed to show a purpose upon the part of Wright and Terry to bind Wright personally as a debtor to the men, then it must also be construed as showing also an intent to bind Wright's agent individually, which would be altogether unreasonable. Instead of being an undertaking by Wright that he would become the debtor of the men who should continue or be on duty and unpaid at the end of the drive, we think it to be a provision intended to enable Wright to protect himself, if he saw fit to avail himself of it, against any annoyance which he might apprehend from Terry's not paying the men; it was not an agreement with any one else than N. B. Terry, nor one binding Wright to pay a larger sum of money or consideration than the first paragraph indicates. If it be said that it was a regulation of the manner of paying in part the consideration, or performing the undertaking of Wright, still it was one within the control of Wright and Terry and capable of being changed by them.

If, before the end of the drive was reached, Wright had

advanced to N. B. Terry all of the money that, on the completion of the drive, he could claim under the first clause, we think. that neither Terry nor any one could insist on such payment being made, because it was an agreement whereby even N. B. Terry or Wright intended that personal liability to the men should be undertaken by Wright, but was one of convenience to Wright.   The fact that the plaintiff was shown this contract at the time he contracted with or was hired by N. B. Terry did not change its legal obligation upon Wright, or in other words, did not make the plaintiff any more the employe or creditor of Wright than if it had not been shown or mentioned.   We do not say that Wright could not have so contracted as to have made himself personally liable to the men, but think this is not a contract in which he so undertook.   In those cases wherein A. has promised B. for a valuable consideration, moving from B. to pay to C. a debt owed to him by B., and in which it has been held that C. could sue A. to recover the amount which he promised B. to pay, it will be found that the agreement or promise has shown a clear intent and purpose upon the part of both A. and B. that A. should become the debtor of C., and the mere fact that C. might be benefited by the promise to B. has been held not to be sufficient to constitute A. the debtor of C., or to authorize the latter to sue him.   C. must be the party intended to be benefited ; directly and primarily, say some authorities.   Simson vs. Brown, 68 N. Y., 355, 361, 362 ; Merrill vs. Green, 50 N. Y., 270 ; Turk vs. Ridge, 41 N. Y., 201 ; Dow vs. Clark, 73 Mass., 198 ; Field vs. Crawford, 72 Mass., 116 ; Mellen vs. Whipple, 67 Mass., 317 ; Fitch vs. Chandler, 58 Mass., 254; Greenwood vs. Sheldon, 31 Minn., 254.

Assuming that N. B. Terry had, by virtue of the contract and his possession of the logs thereunder, a lien on the

logs by the common law, or, in other words, independently of the statute of 1875, (sec. 39, p. 729, of McClellan's Digest,) hereafter to be considered, still at the common law the appellee and his co-laborers had no lien thereon. The lien of a bailee does not, as against the bailor, extend to the persons employed under the bailee. Story on Bailments, §440; Hollingsworth vs. Dow, 19 Pick., 228. An exclusive legal possession is an essential element of a common law lien on personal property. McIntyre vs. Carver, 2 W. and S., 392. And apart from the principle stated in the preceding sentence, barring appellee from a lawful assertion of a lien as against Wright, there is moreover nothing in the record to support, even as against N. B. Terry, the idea that appellee and his co-employes would at common law have any lien. Their possession was that of N. B. Terry. Though N. B. Terry states once in his testimony that the men were holding the logs until they got their pay, it is plain from the testimony that the only possession the logs were in from the time N. B. Terry took them to commence the drive till Wright's agent got them was that of N. B. Terry; this is shown even by N. B. Terry's testimony; there was no agreement between him and the men which gave them possession as against him. A lien cannot be acquired through a possession unlawfully obtained; (2 Kent, 638, 639,) and consequently any attempt on the part of N. B. Terry to give them a lien for their labor through a possession, exclusive of his own, after the drive was completed, would not have prejudiced Wright.

This brings us to a consideration of the above statute of 1875, which is entitled "an act to protect laborers and lumbermen;" and which provides "that laborers and contractors, contracting and engaging to cut, raft or sell logs or timber of any kind, or to perform any labor in connection with the sale and delivery of any such logs or timber, shall

have a first lien on such logs or timber, or any lumber, boards, staves, laths or shingles manufactured therefrom, until the compensation for services shall be fully paid and satisfied to the amount agreed upon by the contracting parties, unless a contrary stipulation be entered into at the time the contract is made or work done, which lien shall be enforced in like manner as the lien provided for builders, mechanics, material men, laborers, &c." Assuming that to "drive" and to "raft" logs are the same, this statute in so far as it applies to laborers so employed gives a lien only to "laborers * * * contracting and engaging to * * raft logs or timber of any kind," and only for "compensation for services * * to the amount agreed upon by the contracting parties." The lien is given to the laborers or contractors with whom the owner of the logs contracts. If he hires laborers, his laborers have a lien; if his agreement for rafting is with a contractor who is to raft the logs and employ his own help "the contracting parties" are the owner and the contractor. The hired help or employes of the contractor are not contracting parties with the owner; they are not his "laborers." If the appellee and his co-employes were in the employ of Wright, then as against Wright they had a lien on the logs for the amount which it was agreed upon by them and him that they should be paid. Had Wright made himself responsible to the men by an undertaking which bound him to pay them their wages, one whereby he would have become indebted to them for the labor, on the performance of it, we do not say that they would not have been within the statute in so far as it gives a lien; in such a case the contract would have in law made them contracting parties with him, but such is not the fact here. Any other construction as to who are the "contracting parties" within the meaning of this statute would make the logs of

one person subject to a lien for a greater amount than he may have agreed to pay for rafting, or at least make the owner's logs liable for payment to the employe or sub-contractor under the person the owner may have contracted with, of the amount he has contracted to pay, even though he may have previously paid it to the contractor. That the former of these two results must follow is evident, if the "contractor" and his employes are the "contracting parties" within the meaning of the statute, for if they are such the lien is good for the amount agreed upon by them, and the result is unavoidable if the act gives the employe or sub-contractor, under the contract, a first lien on the logs.

It cannot be held that the language quoted from the act as giving the real meaning and purpose of it does not apply as well to "laborers" as to "contractors."

An attempt to give effect to the statute in behalf of laborers without so applying them will demonstrate our view. The construction we give to the statute is according to the meaning of its terms and is supported by authority. Jacobs vs. Knapp, 50 N. H., 71 ; Landy vs. Blanchard, 16 La. Ann., 173 ; Harlan vs. Rand, 27 Penn. St., 511.

It is not contended that there was any assignment by N. B. Terry of both a lien held by him for an amount actually due to him under the contract by Wright and of his, Terry's, possession to the plaintiff, and consequently it is not necessary to discuss either such a transfer of lien and possession, or what is necessary to maintain an action of trespass *de bonis asportatis* against one having the general property in a chattel.

The judgment is reversed and a new trial granted.