STREET & JOHNSON, Respondents, v. GOODALE, BARGER & COMPANY, Appellants.

Kansas City Court of Appeals, December 5, 1898.

1. **Contracts**: PROMISE FOR THE BENEFIT OF ANOTHER: DUTY TO SUCH OTHER. A promise supported by a consideration made by the promisor to the promisee for the benefit of a third person is subject to the qualification that the promisee is owing some debt or duty to such third person, but such debt or duty need not be a present one at the time of the promise. Therefore a promise by a bank to its customer to pay his checks will not support an action by the payee against the bank.

2. ——: ——: INTENTION: EVIDENCE. Such promises are further subject to the qualification that the beneficial intent for such third party must clearly appear from the agreement, though such third party need not be expressly named, if it appears that he was intended; and the evidence in this case fails to show the existence of such intent.

*Appeal from the Linn Circuit Court.*—HON. W. W. RUCKER, Judge.

REVERSED.

A. W. MULLINS for appellants.

(1) If there was any contract, express or implied, entered into between Manard and the defendants (which I insist is not the fact), still the plaintiffs were not and are not privies thereto, and are not entitled to avail themselves of it. Howsmon v. Water Co., 119 Mo. 304; Ins. Co. v. Water Co., 40 Mo. App. 118; Kansas City ex rel. v. O'Connell, 99 Mo. 357; Vrooman v. Turner, 69 N. Y. 280. (2) The holder of a bank check can not sue the bank for refusing payment in the absence of proof that it was accepted by the bank or charged against the drawer. Bank v. Millard, 10 Wall. (U. S.) 152; Dickinson v. Coates, 79 Mo. 250, and cases there cited. (3) The court should have instructed

the jury, as requested by defendants, and committed manifest error in giving plaintiffs' instructions.

LANDER, JOHNSON & LANDER for respondents.

(1) This action is based on the alleged contract, or agreement, between Manard and defendants' bank, that the bank would honor and pay all checks drawn by Manard, on the bank, for live stock purchased, in favor of a third person, all proceeds of stock, sold, to be deposited in the bank to the credit of Manard. The checks, mentioned in petition, are only exhibits to show dates, amounts, etc., and only make a part of plaintiffs' evidence in this case. It is conceded that without such agreement on the part of the bank, plaintiffs would have no standing in court. But if such agreement was made, as found to have been made in the trial court, then appellants are liable. Howsmon v. Water Works, 119 Mo. 307, 308, and authorities there cited. Cady v. Bank, 68 N. W. Rep. 358; 49 Neb. 125. (2) The partners owning the bank well knew that the proceeds of sale of the "194 hogs," marked on the check in evidence, was in the nature of a trust fund to meet payment of Manard's check. Under the agreement relied on, and established on the trial, the bank had no right to divert the fund and apply it to past indebtedness of Manard due the bank. Judy v. Bank, 81 Mo. 404; Bank v. Crowell, 51 Pac. Rep. 575. (3) The third point in appellants' brief only goes to part of respondents' evidence (not objected to) as being insufficient to establish the agreement between bank and Manard in regard to payment of Manard's checks. On all the facts, the course of business between the parties and all the circumstances in evidence, it was found in the trial court that the agreement set out in the petition

was made and acted upon. This court will not undertake to review the evidence in the case.

ELLISON, J.—This action is based on a promise alleged to have been made by defendants to D. H. Manard for the benefit of plaintiffs. Defendants demurred to the evidence for plaintiffs. The demurrer was overruled. Defendants did not offer testimony. The judgment in the trial court was rendered against Barger, one of the defendants.

It seems that defendants were conducting a private bank and that Manard owed them several thousand dollars which he could neither pay nor secure. Plaintiffs claim that it was then agreed, between defendants and Manard, that the latter, who was a dealer in live stock, should continue to purchase stock for sale and that they would pay the checks which he might give for such purchases and that he would turn over to them the proceeds of the sales. Manard thereafter bought of these plaintiffs one hundred and ninety-four head of hogs for the sum of $1,241.35, for which sum he gave plaintiffs a check on defendants' bank. This check defendants refused to pay, and plaintiffs instituted this action (not on the check) but on the promise made by defendants to Manard, claiming that it was a promise for their benefit, inuring to them and on which they were entitled to sue.

Plaintiffs not being parties to the contract, the benefit of which they are seeking to retain, rely, for the establishment of their right on that rule of law whereby a promise, supported by a consideration, made by one party to another for the benefit of a third may be sued upon by the latter notwithstanding he was not a party to it. There are exceptions or rather qualifications to the rule. One is that the party to whom the

promise is made must owe some debt or duty to the third party. Devers v. Howard, 144 Mo. 671; Ins. Co. v. Water Works Co., 42 Mo. App. 118; Howsmon v. Water Works Co., 119 Mo. 304; Vrooman v. Turner, 69 N. Y. 280; Townsend v. Rackham, 143 N. Y. 516; Gifford v. Corrigan, 117 N. Y. 257.

*CONTRACTS: promise for the benefit of another; duty to such other.*

In this case, at the time the promise claimed to have been made to Manard, the promisee, he did not owe a debt to these plaintiffs. So the question arises whether, though no debt exists by the promisee to the third party until some time after the promise is made to the promisee, will such third party still be entitled to claim it as for his benefit and sue upon it? The cases under this branch of the law seem, mostly, to have arisen where there was a subsisting debt, either due or to become due, owing by the promisee to the third party, and it is to that debt the promisor's promise is specifically directed. We, however, can not see any good reason why the promise may not attach and become effective, though there is no present debt at the time the promise is made. Coster v. City of Albany, 43 N. Y. 412. And we therefore hold that in so far as this branch of the question before us is concerned, plaintiffs are not debarred of this action by the fact that Manard owed them nothing at the time defendants are said to have made him the promise aforesaid.

But there is still another qualification to the rule, quite as well established as the one just discussed, and that is, that the promise made by the promisor must have been made for the benefit of the third party and so intended by the parties. The beneficial intent must clearly appear from the agreement. Beveridge v. Railway, 112 N. Y. 26; Wright v. Terry, 23 Fla. 160; Vrooman

*——: ——: intention: evidence.*

v. Turner, 69 N. Y. 280. It is of no consequence that the agreement or promise may, in fact, be to the benefit of a third party. Such result would be a mere incident arising from the promise, but no part of it. Wright v. Terry, *supra;* Simson v. Brown, 68 N. Y. 355; Burton v. Larkin, 36 Kan. 246. The third party need not be named in the contract. It is sufficient, if it appears by the contract that he was intended. Burton v. Larkin, *supra.* Devers v. Howard, 144 Mo. 671. We do not need to depend upon cases from other jurisdictions, the foregoing statements are maintained by our supreme court. Howsmon v. Water Co., 119 Mo. 304.

Now it is so manifest it needs no aid from argument that there is no evidence presented to us sustaining the contract contended for by plaintiffs and by which they claim to hold the defendants, under the law which we have discussed. There is no evidence whatever that defendants entered into an agreement with Manard that they would pay to check holders the checks which he might thereafter give them and that he would continue to buy stock. The fact shown that they had theretofore for a long space of time been paying his checks, is of no consequence. If it was, most every bank in business would find itself liable to a suit at the hands of third parties with whom they have no concern. The only other testimony which could be supposed to relate to the contract claimed is that of Manard himself and one of the defendants. The former stated that defendants came to see him about securing what he then owed them. That he could not do so, as his wife would refuse to sign a mortgage for that purpose, and he said: "What do you men want me to do, to quit or to try to make this money back; and Mr. Goodale said no, we do not want you to quit

we want you to go ahead; and I also spoke of some cattle that was up in Iowa, that was just across the line, and he rather insisted that I should go and buy those cattle and held out the idea that he would pay my checks." The testimony of one of defendants was that: "When Mr. Goodale and I went to see Manard in regard to his indebtedness to the bank some time the last of December or the first of January, I did not notify Mr. Manard that he must not check on the bank or contract any larger indebtedness; I think I told him that I did not want it to get any bigger but I did not notify him not to check; that was before the checks were given to plaintiffs."

We can not understand how it could be found from these statements that defendants made a specific agreement of the nature required by the law. They, at most, only represent a loose conversation, expressive of a willingness that he might go ahead in the business in which he was then engaged. They do not show an understanding arrived at by the parties, whereby one side agreed to pay the other's checks and the other to continue to buy stock. It certainly would be unreasonable to suppose that by the conversation quoted, defendants, as bankers, were giving Manard authority with the community to bind them to the payment of whatever checks he might issue in payment for live stock and that this was done for the benefit of whoever might accept Manard's check. It seems to us to sustain this judgment would be a dangerous precedent. The demurrer to plaintiffs' testimony should have been sustained.

With the concurrence of the other judges the judgment is reversed.