THE PUNTA GORDA BANK, PLAINTIFF IN ERROR, v. THE STATE BANK OF FORT MEADE, DEFENDANT IN ERROR.

1. A party who is only incidentally benefitted by a contract of guaranty, has not such interest in its performance as entitles him to sue for its breach.

2. In construing a contract of guaranty a liberal construction should be indulged to determine the intent of the parties, and when that intent is discovered the guarantor is entitled to a strict construction in the working out of the intent.

3. Where it appears from the declaration that the defendant bank and others owned the stock of the Punta Gorda Bank, which was a branch bank of the defendant, and thought it best for the banking interests of Punta Gorda to increase the capital stock of said branch bank from $5,000.00 to $15,000.00, and to incorporate it as a separate independent institution, which was to take over the securities of the one it succeeded, and another party, a stranger, contemplated putting into the new concern, or causing others to do so, the addtional $10,000.00, but was uncertain of the value of some of the securities of the Punta Gorda Branch Bank, especially of one $4,500.00 note, and the defendant and others in order to induce the other party to put in, or cause others to put in $10,000.00 into the enterprise, executed a written guaranty of all the securities of the Punta. Gorda Branch Bank at their face value, and in consideration of this guaranty the additional $10,000.00 was added to the capital stock, and the new bank was organized—which is the plaintiff in this case, and took over the securities of the branch bank, including the $4,500.00 note, and same was lost to the new bank, by reason of the insolvency of its maker, the new bank, which is the plaintiff in this case, has a right of action against the guarantors of the securities of the said branch bank.

4.   The defense of the statute of limitations can not be raised by demurrer to a declaration in an action at law.

5.   The defense of a discharge from a contract can not be raised by demurrer to a declaration where the allegations are inconsistent with a discharge, and under such circumstances a discharge to be available must be pleaded.

This case was decided by Division B.

Writ of error to the Circuit Court for DeSoto County.

The facts in the case are stated in the opinion of the court.

*J. H. Hancock* and *John P. Wall,* for Plaintiff in Error;

*Wilson* & *Wilson,* for Defendant in Error.

HOCKER, J.: On the 12th day of October, 1905, the Punta Gorda Bank, hereinafter called the plaintiff, filed its declaration against The State Bank of Fort Meade, hereinafter called the defendant. The declaration is in the following words: "The Punta Gorda Bank, a corporation organized and existing under the laws of the State of Florida, and doing business in the county of DeSoto, in said State, the plaintiff, by its attorneys, J. H. Hancock and John P. Wall, complains of the State Bank of Fort Meade, a corporation organized and existing under the laws of the State of Florida, but by change of name, now doing business as the State Bank of Lakeland, the defendant;

For that whereas, on or about the 31st day of December, A. D. 1898, the said defendant was operating in the town

of Punta Gorda, Florida, a branch of its business, under the name of the Punta Gorda Bank (branch of the State Bank of Fort Meade) and deeming it best for the prosperity of the banking business at Punta Gorda, Florida, to have the then capital stock of the said branch bank increased from the sum of five thousand ($5,000.00) dollars to fifteen thousand ($15,000.00) dollars; and whereas, one P. W. McAdow, through whose instrumentality the additional sum of ten thousand ($10,000.00) dollars was to be added, as to the value of certain securities held by the said branch bank, was uncertain; and whereas, among such securities, was a certain promissory note given by B. Hinkley to the said branch bank, dated the 18th day of November, A. D. 1898, for the sum of forty-five hundred ($4,500.00) dollars, and maturing sixty days after date, a copy of which is hereto attached and made a part of this declaration; and whereas, it was then and there contemplated by the said P. W. McAdow, and the stockholders of said branch bank, that said branch bank should become an independent corporation, under the laws of the State of Florida, and under the name of the Punta Gorda Bank, and that the said Punta Gorda Bank, when so organized, should take over the entire business of the said branch bank, with all securities held by it at their face value; and whereas, at said time, the defendant was the owner of eleven (11) shares of the capital stock of the said branch bank, the said defendant, with the other stockholders of said branch bank, as an inducement for the said P. W. McAdow to procure or furnish the sum of ten thousand ($10,000.00) dollars, which was to be added to the working capital of said branch bank, under its reorganization, as hereinbefore stated, did then and there

26—S. C.

enter into a written guarantee whereby they did guarantee the full value of all the securities held by the said branch bank, at their face value, as called for by the books of the said branch bank, each stockholder being individually responsible, however, only to the extent of the number of charges held by it, or him, in said branch bank, and the said guarantee was against any loss by failure to collect said securities.

And the said plaintiff avers, that through the instrumentality and influence of the said P. W. McAdow, the sum of ten thousand ($10,000.00) dollars was added to the capital stock of the said branch bank, and afterwards, as contemplated, to-wit: on or about the 17th day of July, A. D. 1899, application was made, as required by law, for a charter under the laws of the State of Florida, and the plaintiff was granted a charter under the laws of the State of Florida, and did then and there, in pursuance of said agreement, take over all the assets of the said branch bank, including all of its securities, and especially the said promissory note of the said B. Hinkley, hereinbefore mentioned, which, before that time, had matured and remained unpaid, until on or about the 18th day of April, A. D. 1899, when, with the consent and acquiescence of the said defendant, a renewal note had been given to the said branch bank, wherein on demand after date, without grace, said B. Hinkley promised to pay to the said branch bank, or order, at its office in Punta Gorda, Florida, the sum of forty-five hundred ($4,500.00) dollars, with the interest after maturity, at the rate of ten per cent. per annum until paid, a copy of which said last mentioned promissory note is hereto attached, and made a part of this declaration.

And the plaintiff avers that it was in consideration of

said guarantee hereinbefore set forth, that the said sum of ten thousand ($10,000.00) dollars was added to the capital stock of said branch bank, and that the plaintiff purchased the said assets of the said branch bank, as hereinbefore stated.

The plaintiff further avers that the said B. Hinkley departed this life intestate, on the 15th day of March, A. D. 1904, and that letters of administration were not sued out and issued upon his said estate until the 27th day of August, A. D. 1904, and on which said date, the County Judge, in and for DeSoto county, Florida, in accordance with the statutes in such cases made and provided, issued letters of administration upon said estate;

And the plaintiff avers that during the lifetime of the said B. Hinkley, he had used all diligence to collect said promissory note, and after the issuance of letters of administration, aforesaid, the plaintiff did, on the 10th day of September, A. D. 1904, commence an action at law against the administrator of the estate of the said B. Hinkley, deceased, and prosecuted the same to final judgment, which was rendered on the 16th day of November, A. D. 1904, for the sum of seven thousand two hundred and seventy-five ($7,275.00) dollars, as its damages, and the further sum of ................................., as its costs in this behalf sustained; that execution was duly issued on said judgment and placed in the hands of the sheriff of the said county of DeSoto, for levy upon any property which might be subject to levy, and that on the 18th day of November, A. D. 1904, the said execution was returned by the said sheriff of DeSoto county, to the Clerk's office with the endorsement thereon, of *nulla bona*.

And the plaintiff further avers that the amount of said debt with interest to the date of said judgment, was the

sum of seven thousand two hundred and seventy-five ($7,275.00) dollars, and that pro rate share due by the defendant to the plaintiff, according to the terms of said guarantee, is the sum of sixteen hundred 50-100 ($1,600.50) dollars.

And afterwards, to-wit: on the 19th day of May, A. D. 1905, the said defendant, in consideration of the premises, then and there promised to pay to the plaintiff the said sum of sixteen hundred 50-100 ($1,600.50) dollars with interest, but it has refused and neglected to do so, to the damage of the plaintiff, in the sum of three thousand ($3,000.00) dollars; therefore it brings suit."

A demurrer was interposed to this declaration containing ten grounds. Upon a hearing the demurrer was sustained, the cause dismissed and judgment entered for the defendant.

A writ of error was sued out from this judgment. There are two assignments of error. First, that the judge below erred in sustaining the demurrer, and, second, that he erred in giving judgment for the defendant.

Among the grounds of demurrer were these: That the declaration does not show there were proper parties to the guaranty sued on; that no cause of action against the defendant is stated; that the action was barred by the statute of limitations; that no mutual rights or obligations between the plaintiff and defendant are shown; that the acts complained of are *ultra vires* and void; that the time for payment of the Hinkley note was extended without the written authority or consent of the defendant; that the contract of guaranty was within the statute of frauds, and that more than five years elapsed between the date of the maturity of the Hinkley note and the date of the commencement of this suit.

The case presented is not without difficulty. If the plaintiff was only incidentally to be benefited by the contract of guaranty sued on, and the main object was to secure McAdow in taking stock in the new bank which the guarantors desired to create in Punta Gorda, then the plaintiff would probably have no right of action under the authority of Wright v. Terry, 23 Fla. 160, 2 South. Rep. 6. The rule established by the Supreme Court of the United States is that the words of a guaranty are to be taken as strongly against the guarantor as the sense will admit. Drummon v. Prestman, 12 Wheat. (U. S.) 515; Smeltzer v. White, 92 U. S. 390, text 392. This doctrine was referred to as applicable to the obligations of a guaranty between individuals in Hawkins v. Mitchell, 34 Fla. 405, text 420, 16 South. Rep. 311. It seems to us that a liberal construction should be indulged, to determine the intent of the parties, and that when that intent is discovered the guarantor is entitled to a strict construction in the working out of the intent. 20 Cyc. 1424-5-6; 14 Am. & Eng. Ency. Law (2nd ed.) 1144.

It appears from the allegations of the declaration that the defendant and others owned the stock of the Punta Gorda Bank, which was a branch bank of the defendant. These parties thought it best for the banking interests of Punta Gorda to increase the capital stock of the latter bank from $5,000.00 to $15,000.00, and to incorporate it as a separate independent institution. McAdow contemplated putting in the new bank the additional $10,000.00, or procuring others to do so, and the new bank was to take over the securities of the one it succeeded; but McAdow was uncertain as to the value of certain of the securities, especially the note of Hinkley for $4,500.00. To induce McAdow to go into the new bank or induce others to do so

and put in the additional $10,000.00, the defendant and other stockholders of the branch bank at Punta Gorda executed a written instrument guaranteeing all the securities held by the branch bank at the face value against any loss by failure to collect said securities. This guarantee was executed on or about the 31st of December, 1898. In consideration of this guaranty $10,000.00 was added to the capital of the Punta Gorda Bank, and in pursuance of it the new bank, the plaintiff in this case, was organized and took over all the assets of the branch bank, including the Hinkley note, which in the meantime had matured, and Hinkley, with the consent of the defendant, had executed a renewal note, due on demand after date for $4,500.00 with 10 per cent. interest. The Hinkley note proved valueless to the plaintiff, the new bank, and it sues on the guaranty. Construing this contract of guaranty in the light of the circumstances surrounding the parties it seems to us that it was the intent of all the parties that the guaranty should so strengthen the financial position of the new bank as to induce McAdow to become interested in it, and therefore it was executed for the benefit of the new bank. McAdow and all other stockholders in the new bank were incidentally benefited by the guaranty, but its primary object was the benefit of the new bank. Taking this view, we think the plaintiff had the right to sue on this guaranty. It is not contended here that McAdow did not accept the proffered guaranty, or that the defendant did not have notice of such acceptance and the facts alleged very clearly imply, we think, that the guaranty was accepted by McAdow, and that the defendant had notice of the acceptance.

The contention by the defendant in error is that no one but McAdow could sue on the contract of guaranty; that

no contractual relations existed between the plaintiff and
the defendant, and that no consideration is shown to
support a contract between the parties, and, therefore,
there is no valid contract. It seems to us that there was a
clear benefit to be derived by the defendant and the stock-
holders of the branch bank from getting McAdow with
his $10,000.00 into the new bank. It could have had no
other effect than to give stability to the value of their
stock, if it did not materially increase it, by enlarging the
capacity of the bank for carrying on its business. This
element of advantage was a sufficient consideration to
support the contract. Furthermore, McAdow by accept-
ing the guaranty and putting in his money or procuring
others to put in money gave full consideration for the
guaranty. Ferst v. Blackwell, 39 Fla. 621, 22 South. Rep.
892. If the contract was intended for the benefit of the
new bank, as we think it was, then there can be no ques-
tion that it has a right to sue upon it. Wright v. Terry, 23
Fla. 160, 2 South. Rep. 6; 7 Am. & Eng. Ency. Law
(2nd ed.) pp. 106-7-8 and notes. This was not the doctrine
of the common law in a case like this and perhaps is not
the rule in several American States, but under statutes
like ours authorizing the real party in interest to sue
(section 981 of Rev. Stats. of 1892) we think the question
is settled. Wright v. Terry, 23 Fla. 160, 2 South. Rep. 6;
7 Am. & Eng. Ency. Law (2nd ed.) pp. 104 to 110 inclu-
sive. The foregoing statute has been applied in several
cases. Little v. Bradley, 43 Fla. 402, 31 South. Rep. 342;
Vinson v. Palmer, 45 Fla. 630, 34 South. Rep. 276; Jor-
dan v. Ryan, 35 Fla. 259, 17 South. Rep. 73.

It is contended by the defendant in error that the cause
of action in this case was barred by the statute of limita-
tions, and that this defense can properly be raised by de-

Punta Gorda Bk. v. The State Bk. of Ft. Meade—Opinion of Court.

murrer in an action at law. Whatever may be the rule in the Code States, we can not discover that in those States where the common law system of practice prevails the defense of the statute of limitations can be presented otherwise than by plea. 13 Ency. Pl. & Pr., 200. If the defendant could avail himself of the statute by demurrer, the plaintiff would be deprived of the opportunity of replying such facts as might show the statute did not apply. 13 Ency. Pl. & Pr., 200; 1 Tidd's Pr. (4th Am. ed.) 646.

The defendant in error also contends that the defendant was discharged by the action of the plaintiff in taking from Hinkley a new note due on demand. There is nothing in the declaration which shows such a discharge, as the declaration alleges this was done with the consent and acquiescence of the defendant. Besides, a discharge is a matter which must be pleaded. 1 Tidd's Pr. *supra;* 4 Ency. Pl. & Pr. 665. The question of *ultra vires* is also attempted to be raised by demurrer, but there are no facts stated in the declaration from which this question can be determined.

It seems to us that the declaration was sufficient to withstand the various grounds of demurrer, and that the latter should have been overruled and the defendant permitted to plead as advised.

The judgment below is reversed at the cost of defendant in error.

TAYLOR and PARKHILL, JJ., concur;

WHITFIELD, J., concurs in the opinion.

SHACKLEFORD, C. J., dissents.

COCKRELL, J., concurring: In my opinion, the interest of the Punta Gorda Bank in the contract of guaranty between the State Bank of Fort Meade and McAdow is too remote to form the basis of an independent action; the contract may, however, be a sufficient inducement or predicate upon which to found the absolute specific promise to pay alleged in the concluding paragraph of the declaration and upon this theory the declaration may be sustained. For this reason alone I concur in the reversal.