THOMAS APPLEGATE v. QUINCY, OMAHA & KANSAS CITY RAILROAD COMPANY, Appellant.

**Division One, July 10, 1913.**

1. **PLEADING: Cause of Action: No Demurrer: Objection to Evidence: Liberally Interpreted.** An objection that the petition does not state a cause of action, not made by demurrer, but by an objection to the introduction of any testimony, is never sustained because of a lack of certainty or definiteness in allegation, or because of informality in the statement of essential fact, or because a cause of action is defectively or obscurely stated, but is disallowed if, by reasonable intendment or fair implication from facts stated or by most liberal construction, the essential allegation may be pieced out or made clear by reasonable inference.

2. ————: ————: **Breach of Contract or Tort.** Where plaintiff's action against a railroad company is one sounding in tort, to recover damages for personal injuries received while attempt-

ing to stop a car with a pinch bar on a switch track in front of a warehouse so that beer hauled therein might be unloaded, allegations of a running arrangement between the railroad company, the brewing company and the consignee of the beer for unloading and storing the beer in the warehouse, brought in for the manifest purpose of showing plaintiff was an employee of such consignee and therefore was not a trespasser at the place of injury, will not be held to convert the action into one for a breach of a contract made for his benefit, but will be held to fortify his action *ex delicto* to the point of showing plaintiff was at a place where he had a right to be and that defendant owed him a duty not to negligently injure him.

3. **NEGLIGENCE: Low Joint in Railroad Rails: Moving of Car by Pinch Bar: Question for Jury.** Low joints in railroad tracks are a fruitful cause of accidents, and the negligent maintenance of them is actionable where injury results therefrom to those rightfully using the track. Where a carload of beer had arrived and was "spotted" on a side track in front of a warehouse to be unloaded; the consignee sent his employees, plaintiff among others, to unload it; to do that, it was necessary, as usual, to move the car so that its door would be opposite a certain door of the warehouse; when the brake was loosed, the car moved off slowly of its own gravity, the grade declining about one per cent; plaintiff's assigned duty was to assist on the ground in controlling the movement of the car, so that it would stop opposite the door; to do this he took an iron pinch bar usually employed for that purpose, and put the beveled side next to the ball of the rail and in line with it, so that the flange of the wheel would miss it, but the tread would not, and in that way undertook to control the movement of the car by chocking the wheel; as he was moving backward, chocking the wheel, suddenly the car made a quick lunge or jerk, ran up on the end of the bar, pressed it down on his boot top, threw him across the track and crushed his leg; the evidence is contradictory as to whether he employed the right method of chocking a car moving slowly of its own gravity down a slight grade, but it is substantial that he employed a usual and reasonably safe method; on the other rail there was a low joint that had been there for several months, five or six inches out of surface level, described as a "swinging" joint, with a "lip," and there is substantial evidence that the lunge or jerk of the car was caused by this defective joint, which was on the other side of the car from him, covered by the car, and its existence unknown to him— the court could not say as a matter of law that plaintiff's injury was due to his negligent use of the pinch bar, or that defendant's negligence in maintaining the defective joint was not the proximate cause of the injury, but both questions were for the jury to answer.

Applegate v. Railroad.

4. ————: **Specified in Petition: Identified in Instruction.** Where the petition alleges specified negligence without a general charge, plaintiff is not to be confined in his instructions to a specification of the identical plan he adopted for doing the work he was engaged in when he was hurt. So that where the petition charged that plaintiff, in checking the movement of the car to another door of the warehouse, did so "by placing the end of a heavy iron bar between the rail and wheel," an instruction telling the jury that if "plaintiff was engaged in blocking said car with an iron bar" and "was in the exercise of ordinary care," etc., did not merely require the jury to find plaintiff was "in the exercise of ordinary care," and did not substitute ordinary care for the petition plan of checking the car.

5. ————: **Combined With Negligence of Others.** It is not error to instruct the jury that if the negligence of defendant combined and united with the negligence of some one else to cause the injury, it would not defeat recovery. And such instruction is appropriate where defendant has pleaded that plaintiff's injuries were due to other persons not in its employ.

6. ————: **Plaintiff's Carelessness: Ignoring Issues.** The court did not err in refusing an instruction asked by defendant telling the jury that "if you find from the evidence that the plaintiff received his injuries because of the carelessness of himself and others working with him your verdict must be for defendant," since it entirely ignores defendant's negligence, attempts to connect the conduct of other workmen having nothing to do with that negligence with plaintiff's injuries, and the issue of his contributory negligence was covered by another instruction.

7. ————: **Inserting Words "Knowingly or Negligently" in Instructions.** Where the instruction asked by defendant told the jury that "if plaintiff chose an unsafe way of doing what he undertook to do when there was a safe way open to him, the verdict must be for defendant, even though you should believe his reason for taking the unsafe way was his inexperience or ignorance," the court did not err in inserting the words "knowingly or negligently" before the word "chose." If he chose an unsafe way, it was negligence, and the word "negligently" neither added to nor subtracted therefrom; and the word "knowingly" merely clogged plaintiff's case, since an inexperienced or ignorant man is chargeable with the same due care that an experienced and skillful man is.

8. **EXCESSIVE VERDICT: $10,000: Loss of Leg.** Compensation is the measure of damages for personal injuries due to negligence; and the age, earning capacity, the extent and nature of the injury and suffering, time lost, and complications, that arose, are all considered. Where plaintiff, aged 53 years, made a living by doing odd jobs of carpenter work, earning $25 to $40 per month, lost his right leg below the knee, as a result of the

accident, there being no complications and no other injuries, and $200 covered the charge for medical attendance, a verdict for $10,000, there being an instruction telling the jury to allow damages not exceeding the amount mentioned in the petition and improper argument not technically reversible error, is reduced to $7500.

Appeal from Daviess Circuit Court.—*Hon. Arch B. Davis*, Judge.

Affirmed (*conditionally*).

*Dudley & Selby, Hall & Hall* and *J. G. Trimble* for appellant.

(1) The trial court erred in overruling appellant's objection to the introduction of any evidence, for the reason that the petition did not state facts sufficient to constitute a cause of action against the defendant. Howsmon v. Water Co., 119 Mo. 308; Phoenix Ins. Co. v. Water Co., 42 Mo. App. 118; Manny v. Frasiers, 27 Mo. 419; Page v. Becker, 31 Mo. 466; Street & Johnson v. Goodale, Barger & Co., 77 Mo. App. 321; Harberg v. Arnold, 78 Mo. App. 239; State ex rel. v. Loomis, 88 Mo. App. 507; Lewis v. Land Co., 124 Mo. 684. (2) There was a total failure of evidence to establish the allegations of the petition and the demurrer to the evidence should have been sustained for that reason. There was no evidence that plaintiff was pinching the car, or blocking it, by placing the end of a heavy iron bar between the rail and the wheel, causing the car to move slowly and perfectly at the time of the injury as charged in the petition. The injury was the result of plaintiff's own negligence, and for that reason he was not entitled to recover. Fulwider v. Gas, L. & P. Co., 216 Mo. 598. Plaintiff's own negligence caused his injury and bars a recovery. Huss v. Bakery Co., 210 Mo. 53; Spiva v. Coal & Mining Co., 88 Mo. 75; Millsap v. Beggs, 122 Mo. App. 7; McIntosh v. Railroad,

58 Mo. App. 288; Wray v. Light Co., 68 Mo. App. 380; Beymer v. Packing Co., 106 Mo. App. 726; Junior v. Light & Power Co., 127 Mo. 84; Loving v. Railroad, 128 Mo. 349; McCarty v. Hotel Co., 144 Mo. 397; George v. Manufacturing Co., 159 Mo. 333; Holmes v. Brandenbough, 172 Mo. 53; Doerr v. Brewing Co., 176 Mo. 547; Smith v. Box Co., 193 Mo. 715; Dressie v. Railroad, 145 Mo. App. 163; Deg v. United Railways Co., 140 Mo. App. 461; Holland v. Railroad, 210 Mo. 338. The plaintiff could have readily seen the conditions of the track if he had used ordinary care. He was a man of mature years, and a skilled workman, and was capable of judging the natural and probable effect of moving a heavily loaded car over an uneven track with low joints. He could have seen the condition. Moore v. Railroad, 176 Mo. 528; Cooley on Torts (2 Ed.), 812; Wheeler v. Wall, 157 Mo. App. 44; 7 Am. & Eng. Ency. Law (2 Ed.), 385, 386; Kinney v. Onsted, 113 Mich. 96; Gibson v. Loinard, 143 Ill. 182, 36 Am. St. 376; Plummer v. Dill, 156 Mass. 426, 52 Am. St. 463; Sparks v. Siebrecht, 45 N. Y. Supp. 993; Atkins v. Transportation Co., 182 Ill. 237; Brisco v. Railroad, 103 Ga. 224; Quinn v. Railroad, 162 Ind. 442; Hogan v. Railroad, 150 Mo. 55. To entitle plaintiff to recover it devolved upon him to prove that the particular act of negligence complained of caused his injury. McGee v. Railroad, 214 Mo. 530; Glaser v. Rothschild, 221 Mo. 180; Kinlen v. Railroad, 216 Mo. 145; Decker v. Railroad, 149 Mo. App. 537. The condition of appellant's unloading track was not the proximate cause of his injury, but his own negligent and inexperienced manner in using the bar, for which appellant was not liable. Richmond v. Railroad, 133 Mo. App. 463; Saxon v. Transfer Co., 145 Mo. App. 693; Lymon v. Dale. 156 Mo. App. 431; Haley v. Transit Co., 179 Mo. 30; Monday v. Railroad, 136 Mo. App. 692. (3) There was not sufficient evi-

dence to support or authorize the giving of plaintiff's instruction 1. It ignores both the pleadings and the evidence. The plaintiff in the petition specifically alleges the manner in which he was attempting to stop, or block the car; "that is, by placing the end of a heavy iron bar between the rail and wheel." Watson v. Railroad, 133 Mo. 251; McCarty v. Hotel Co., 144 Mo. 402; McManamee v. Railroad, 135 Mo. 440; Waldheir v. Railroad, 71 Mo. 515; Schneider v. Railroad, 75 Mo. 295. The plaintiff alleges just what he was doing and just how he was doing at the time of the injury, he cannot be permitted to recover under an instruction submitting a general allegation of negligence, on the part of appellant, and of ordinary care on his part. Fulwider v. Gas, Light & Power Co., 216 Mo. 597; Boyd v. Transit Co., 108 Mo. App. 303. (4) The damages assessed by the jury was excessive, and the result of passion and prejudice engendered by sympathy and the inflammatory language and conduct of plaintiff's attorney in his closing argument. Clifton v. Railroad, 232 Mo. 714.

*Platt Hubbell* and *George Hubbell* for respondent.

(1) Plaintiff's petition states facts constituting a cause of action. The plaintiff's cause of action does not arise by reason of a breach of any express contract. The contracts between the defendant, the brewery company, Davis, and the plaintiff, were proved simply to show that the plaintiff was rightfully and legally working in connection with this switch track, and working in connection with defendant's business. (2) Defendant owed the plaintiff the duty to keep and maintain its switch track in a reasonably safe condition for the uses that the plaintiff might properly make of it. 23 Am. & Eng. Ency. Law (2 Ed.), p. 739; 1 Thomp. Neg., sec. 978; 2 Ib.,

sec. 1841; Sykes v. Railroad, 178 Mo. 712; Young v. Oil Co., 185 Mo. 666; Railroad v. Hummel, 167 Fed. 89. If the track was negligently constructed, as alleged, and that condition occasioned the injuries alleged, defendant would be charged with such negligence. Railroad v. Bryant, 66 S. W. (Tex.) 804; Railroad v. Rodes, 102 S. W. (Ky.) 322; Railroad v. Farris, 100 S. W. (Ky.) 870; Dooley v. Railroad, 110 S. W. (Tex.) 135. Tateman v. Railroad, 96 Mo. App. 448; 3 Elliott on Railroads, sec. 1265c; Butler v. Railroad, 155 Mo. App. 297; Glaser v. Rothschild, 221 Mo. 185; Lessenden v. Railroad, 238 Mo. 247. An injury caused by "low joints" is within the foregoing rules. Railroad v. Benton, 132 Fed. 461; Shugart v. Railroad, 133 Fed. 505; Houts v. Transit Co., 108 Mo. App. 686; Dumphy v. Stock Yards, 118 Mo. App. 516; Hach v. Railroad, 208 Mo. 581; Railroad v. Shaughnessy, 81 S. W. 1026. (2) Plaintiff proved the facts hypothesized in his first instruction. Plaintiff alleged that the defendant negligently maintained a defective switch track. Whether this allegation is true, was properly submitted to the jury. (3) Choice of ways or method of doing the work, is not negligence, unless the choice is knowingly or negligently made. Browning v. Railroad, 118 Mo. App. 449; Well v. Moran Bros. Co., 104 Pac. (Wash.) 174; Olson v. Erickson, 102 Pac. (Wash.) 400.

LAMM, J.—Plaintiff began his action in the Grundy Circuit Court for personal injuries grounded on negligence. The venue was changed to Daviess on defendant's application. From a judgment on a verdict for $10,000, defendant, on apt and due steps, appeals. An outline of the case is this:

A brewing company of Quincy, Illinois, built a cold-storage beer warehouse hardby defendant's spur track (known as a "team" track) at Trenton, Missouri, on defendant's right of way. This warehouse

had three doors next to the team track and was built under a contract between defendant and said brewing company. Presently, under a contract between brewing company and one Davis, a beer dealer at Trenton, said Davis got the use of the warehouse to store beer purchased by him from the brewing company in car load lots and carried by defendant from Quincy to Trenton and delivered at the warehouse at so much per car. The details of these contracts are unimportant except as evidence of a running arrangement for the mutual benefit and profit of defendant, Davis and brewing company. Certain kinds of loaded freight cars (among them beer cars) consigned to Trenton over defendant's railroad were customarily stored on this team track to be unloaded by their respective consignees. Under the running arrangement between brewing company, defendant and Davis, when a car of beer came in it was "spotted" on its team track, so that the car door would be opposite the east or west door of the warehouse. The brake was then set and, by use of a plank runway from the car door to the warehouse door, the beer would be unloaded into the warehouse, kegs in one door and the bottled goods in another. The warehouse was so arranged that this could only be done by moving the cars. When defendant spotted such car, as aforesaid, the unloading was done by Davis. Any spotting of the car contemplated, however, that there would be a necessity to move the car from one door to the other of the warehouse, and to do that man power was necessary —the team track being a gravity track on a grade of one per cent fall to the east.

On the 8th day of May, 1909, defendant company "spotted" a car load of beer, consigned to Davis by said brewing company, in front of this warehouse on its team track in such way that the car door was opposite the west door of the warehouse, set the brake and left the car there to be moved as necessary, un--

loaded and then reloaded by Davis from the warehouse with "empties" ready for reshipment. This car was loaded in such way that to unload its contents into the warehouse it was necessary to move it by man-power, as usual, from one door to the other, say nineteen feet. The unloading as well as the moving were wholly performed by Davis's men, as usual. Plaintiff was an employee of Davis in and about moving and unloading the car as were all others so engaged. In moving this car it gathered speed unexpectedly *en route,* and ran on a pinch bar used by plaintiff to chock it. The pinch bar thereat caught the top of plaintiff's boot leg and crushed his right leg down, mashing the bone of that leg between the knee and ankle, making immediate amputation necessary.

More than one ground of negligence is averred in the petition, but only one was put to the jury, namely, the negligent condition of the track.

So, a swarm of exceptions were saved at the trial, but defendant does not here press rulings thereon as reversible error except as follows:

*First*: In overruling an objection to the introduction of any evidence, for that the petition did not state facts sufficient to constitute a cause of action.

*Second*: In refusing a mandatory instruction at the close of the case (and herein of contentions (1) that plaintiff's own negligence caused his injury, and (2) failure to prove that the pleaded negligence caused his injury, and (3) because the condition of the track was not the cause of plaintiff's injury).

*Third*: In giving plaintiff's instruction number one, for that the evidence did not support it and it ignores both pleadings and evidence.

*Fourth*: In giving plaintiff's second and fourth instructions.

*Fifth*: In refusing defendant's third and fourth instructions as asked and in changing them by interlineation and giving them as changed.

*Sixth*: In refusing defendant's second instruction.

*Seventh*: Because the damages are excessive (and herein of passion and prejudice engendered by inflammatory language and conduct of plaintiff's counsel in his closing argument).

It is obvious that those questions fall logically under four heads, viz: (1) The sufficiency of the petition; (2) the sufficiency of the evidence to make a case (and herein of the mandatory instruction); (3) the instructions; and (4) the excessiveness of the verdict.

We will dispose of the appeal under those subheads. Sufficient of the pleadings, evidence and other parts of the record to present the case understandingly will appear in connection with the determination of those questions *seriatim*.

## I.  *Of the sufficiency of the petition.*

(a) No demurrer was filed, but counsel objected to the introduction of testimony, for that (they argued then and now) the petition did not state facts sufficient to constitute a cause of action. On the disallowance of the objection (which happened), the point was saved.

Pleading: Objection to Testimony.

That way of testing the sufficiency of a petition is not entirely without the pale of correct practice, and this is so by virtue of the doctrine of this court that a petition so lame as to state no cause of action at all presents a jurisdictional defect. [East St. Louis Ice & Cold Storage Company et al. v. Kuhlmann, et al., 238 Mo. l. c. 702 et seq.] Such course smacks of lying in wait, comes late after all invited preparations for

trial are made on issues of fact joined, and is toler-
ated, but not favored.

The rule to go by on such belated objection is
this: It is never sustained because of lack of cer-
tainty or definiteness in allegation, or for informality
in the statement of essential fact, or because a cause
of action is defectively or obscurely stated. Such ob-
jection is disallowed if (by reasonable intendment or
fair implication from facts stated or by most liberal
construction) the essential allegation may be pieced
out or made clear by reasonable inference. It has
been held that the rule applied in disposing of motions
in arrest is applicable to such objection wherein the
grace of every implication is allowed to aid the ver-
dict and mere ambiguity in allegation is resolved in
its favor. [*Vide* the Kuhlmann case, supra, and au-
thorities therein cited and discussed.] It is by that
rule the petition must be judged.

(b) The petition charges, in substance, that
plaintiff is a domestic railroad corporation, in the
times in hand owning and operating a railroad and its
appurtenant sidetracks, cars and locomot-

Pleading:
Breach of
Contract
or Tort.

ives as a common carrier of passengers and
freight for hire from Quincy to Trenton.
That a named brewing company of Quincy,
Illinois, was engaged in the manufacture,
sale and storage of beer, having one Davis as its
representative at Trenton; that for mutual purposes
said company, Davis and defendant maintained a
warehouse for the storage of beer at Trenton appur-
tenant to defendant's sidetrack there; that the beer
was shipped in carload lots over defendant's railroad
by said brewing company to said warehouse where it
was unloaded and stored; that there was an arrange-
ment between the brewing company, defendant and
Davis that defendant should provide suitable cars to
ship the beer and provide a suitable sidetrack from
its main line to said warehouse, where the car should

remain and be moved to and fro in front of the warehouse to be unloaded; that in unloading such cars it was necessary to move them along said sidetrack from one door of the warehouse to another by "man power" and by the aid of gravity, all of which defendant knew and intended. That in performing its duty in the premises defendant placed a car of beer for Davis on its sidetrack in front of said warehouse on May 8, 1909. (The pleader went on to make averments relating to the legal duty of defendant to furnish a reasonably safe car with reasonably safe brakes to control the movement of the car, but, as plaintiff abandoned those charges below, we omit them.)

The petition continues as follows:

"It was also the legal duty of the defendant to furnish and provide for the use of the plaintiff, and others so engaged, a switchtrack and sidetrack that was reasonably safe for the work and purposes aforesaid, and to keep and maintain said . . . sidetracks in a reasonably safe condition for use and operation, and in a reasonably safe condition for transacting said business and doing said work.

"The defendant then and there negligently failed to perform said duty and negligently furnished and provided a car" (here follow averments relating to the car, then follows this:) "and the defendant's switch-track and sidetrack on the south side of said warehouse, and in front of said warehouse was then and there defective and dangerous and had five 'low joints' in it in the space of sixty feet on the south side of said warehouse and in front of the same, which low joints caused a car to move and proceed with jerks, jumps and bounds and with great violence, instead of moving in the ordinary way, and the defendant then and there negligently kept and maintained said switchtrack and sidetrack in said condition, at the place and point aforesaid. The defendant knew of said defective conditions of said . . . sidetrack,

and might have known of said condition by the exercise of ordinary care and diligence.  The plaintiff did not know of said defective condition of  .  .  . said track.

"On May 8, 1909, while the plaintiff was assisting in unloading beer from said car, and while the plaintiff was acting under the orders of said Brewing Company and said Charles Davis and their representatives and while the plaintiff and other servants were moving said car from one door to another of said warehouse, and while said car was moving slowly to the east, of its own weight down said grade, and while one Ora Davis was trying to hold said car with said brake and acting for said Brewing Company and Charles Davis, and while the plaintiff was in the exercise of ordinary care, and while the plaintiff was at the east end and south wheel of said car 'pinching it'—or 'blocking it;' that is, by placing the end of a heavy iron bar between the rail and the wheel, causing the car to move slowly and properly—the wheels of said car came to and passed over and down said low joints, gave a sudden and violent lurch and plunge to the east, jerked said bar out of the plaintiff's hands and passed over said bar and pressed the plaintiff's right leg between said bar and the south rail and cut off the plaintiff's right leg below the knee, rendering amputation necessary, which movements of said car and which injury to the plaintiff was caused by the negligence and negligent acts of the defendant, as aforesaid.

"By reason of plaintiff's leg being so cut off, and said injury, plaintiff's ability to labor has been permanently impaired and lessened; and his general health greatly impaired, and plaintiff has thereby suffered great bodily pain and mental anguish and will continue to suffer the same in the future.

"The plaintiff has expended large sums of money and incurred large indebtedness for medicines and

medical treatment and operations and has lost and will lose his time and the earnings and profits of his labor, and has been physically disfigured and made a cripple for life.

"Wherefore, plaintiff says he has been damaged to the amount of thirty thousand dollars, for which he prays judgment, together with his costs in this behalf laid out and expended."

(*Note*: We may say in passing that, outside of conventional admissions, the answer denied the averments of the petition and pleaded affirmative matter, to-wit, that plaintiff's injury was alone due to his own negligence and that of his fellow workmen (none of whom were defendant's servants) in moving and handling the car of beer; and the reply traversed the new matter.)

The indictment of the petition does not go so much to an absence of an essential averment, or vice of form, as it does to what counsel conceive is a fundamental misconception of the law on plaintiff's part. Counsel construe the petition as counting on the contractual running arrangement between Davis, the brewing company and defendant, hence that the suit is one for the breach of a contractual duty. They argue that plaintiff was a stranger to that contract and not privy to its terms or considerations; that on the face of the petition the arrangement was not made for the benefit of plaintiff and therefore defendant owed plaintiff no contractual duty to be breached. On that contention we rule as follows:

There is a doctrine of the law to the effect that before a promise made by A to B can be sued on by C, a stranger to the contract, it must be made for the benefit of C and be so intended by the contracting parties. [Howsmon v. Trenton Water Company, 119 Mo. 304; Lewis v. Brookdale Land Company, 124 Mo. 672; Roddy v. Railroad, 104 Mo. 234; Street & John-

son v. Goodale, Barger & Co., 77 Mo. App. 318; and Harberg v. Arnold, 78 Mo. App. 237.]

We find no fault with the principle announced. But it is quite inapplicable to a case sounding solely in tort, as here. Plaintiff did not sue *ex contractu*, but *ex delicto*. He did not ask damages for the breach of contractual duty, but for breach of a common law duty. The function of that part of his petition referring to the contractual running arrangement between brewing company, Davis and defendant for their mutual benefit and profit, was not a statement of facts constitutive of his cause of action, but was merely by way of prelude or inducement intended to put plaintiff in such relation with the facts as to sue at all, namely, to show that he was not a trespasser on defendant's track, but was an invitee to whom defendant owed the primal duty all men lie under, viz., of exercising ordinary care.

The law is that if plaintiff was where he had the right to be and where he was intended to be by defendant in transacting legitimate business in unloading one of defendant's cars (that is, where he was expressly or impliedly invited to be, Glaser v. Rothschild, *infra*), then defendant owed him a duty essentially differing in degree from that it owed a trespasser or bare licensee, to-wit, a duty not to injure him by wantonness or some form of active mischief. *Contra*, it owed him the duty to maintain its team track in a condition reasonably safe for the uses it was intended by defendant that those unloading the car, to-wit, the employees of its customer, would naturally and properly put it to. For a breach of that common law duty an action lies. [2 Thomp. on Neg. (Ed. 1901), sec, 1841; 1 *Ibid.*, sec. 978, and authorities cited; Sykes v. Railroad, 178 Mo. 693; Young v. Waters-Pierce Oil Company, 185 Mo. 634; Tateman v. Railroad, 96 Mo. App. 448; Butler v. Railroad, 155 Mo. App. 287; Glaser v. Rothschild, 221 Mo. l. c. 185-6. In a late

case, Clark v. Railroad, 234 Mo. 1. c. 417 et seq., both the rule and its reason are well stated and discussed by WOODSON, J.]

After sifting the philosophy of the doctrine as gathered from precedents, a standard treatise states the sum of the matter to be that (1 Thomp. on Neg. (Ed. 1901), sec. 978, supra):

"The owner or occupier of premises manifestly owes to the *employees* of his customer, coming upon his premises to do business for their employer, the same duty that he would owe to their employer himself. Thus, the owner of a coal yard, in which a railroad track was built for the mutual interest of the owner and the railroad company, was held to owe to an employee of the railroad company, while riding on a freight car in the coal yard, with the knowledge of the servants of the owner of the yard, the degree of care which an ordinarily prudent person would exercise in favor of another under like circumstances. So, a railroad company permitting another railroad company to use its tracks, is bound to exercise ordinary care in the construction and maintenance of its bridges, to the end of protecting the servants of the lessee company; and this will require it to maintain its bridges in such a manner as to permit a safe passage through them, in the usual way, to cars which are in common use upon other roads, although such cars are higher than the cars of the lessor company. Where the owner of premises, or one carrying on a business, provides something to a customer, for the use of the servants of the latter in carrying on the business of the customer with the former, a servant of the customer injured by the defective condition of the thing so provided, may have an action against the person furnishing it to his master; for it was actually intended by the defendant to be used by the servants of his customers; and if the servant's employer, as

such a customer, was invited by the defendant to use it.''

It is on such premises we conclude that the peti-tion stated facts constituting a cause of action, hence that the objection to introducing any evidence was well ruled below.

II. *Of the sufficiency of the evidence* (*and herein of defendant's refused mandatory instruction*).

Defendant did not demur to the evidence at the close of plaintiff's case in chief, but went on and put in its case elaborately. When able and veteran counsel take that course, may not an appellate court indulge the notion that the first impression of counsel, struck off in the very heat and glow of the work, was that plaintiff had made a case for the jury it was called on to meet? Why go on and defend against *nothing*? May not a safe conclusion be that the strength of defendant's present position is somewhat sapped by its failure to act sooner? Is that course not letting defendant im-pugn itself by pitting its final affirmative claim over against its early silence? May not one in law, as in the drama, ''Look here on *this* picture—and on *this?*''

Negligence: Moving Car in Unloading: Low Joints in Rails: Chocking.

But the case need not break on fanciful conceits. Defendant finally asked a mandatory instruction for the jury to find in its favor at the close of the whole case, and now argues that the evidence did not make a case to go to the jury at all. That contention seeks the facts. Avoiding details, spread throughout a vol-uminous record, attend to those facts not already stated:

Plaintiff put in proofs tending to show that the custom was to unload beer on the day the car was spotted. Accordingly on the day in question when Davis was notified his carload of beer had arrived and was spotted at the warehouse, he sent his employees

to unload it. Plaintiff was a picked-up man. In the course of the business it was necessary, as usual, to move the car so that its door would be opposite the east door of the warehouse, instead of the west door where defendant left it. To that end, the brake being tight set, it was necessary to loose it. One of Davis's employees got on the car and, failing to release the brake by twisting the hand wheel, loosed it by knocking the dog from the cogs of the rachet wheel. Such course was allowable when there was call for it, as here, and there is no testimony tending to show that it had aught to do with the accident. One witness testified that sometimes when a brake is set very tight on a standing car, the car gathers up, and when the brake is loosed there is a movement or spring of the car, but he said all cars did not act that way and there is no testimony this one did. *Contra,* when the brake was loosed the car moved off slowly by its own gravity for several feet. Plaintiff's assigned duty was to assist on the ground in controlling the movement of the car so that it would stop at the right spot opposite the other door. To do this he took an iron pinch bar usually employed for that purpose—a bar about five or six feet long, beveled on one side at the heavy end. A pinch bar is a kind of crow-bar. He put the beveled side next the ball of the south rail and in line with the rail, he says, so that the flange of the wheel would miss it but the tread or rim of the wheel would come in contact with the beveled edge of the bar, and, standing outside the south rail of the track, he undertook to control the movement of the car by chocking it with the bar. The employee who had loosened the brake was still on top of the car manipulating the brake wheel. Everything was well for three or five feet, plaintiff was moving backward facing the car and chocking it when suddenly it made a quick lunge, or jerk, ran up on the end of the bar, smashed it down on plaintiff's boot top, threw plaintiff down across the

track and crushed his leg practically off. There are
no prescribed rules for chocking cars. It seems to be
left to the common sense of the employee. Experienced
railroad men testified pro and con on the issue
whether the plan plaintiff says he adopted was a
proper one in chocking a car moving slowly down a
slight grade on its own gravity. Some of them were
of opinion it was and some were of opinion it was not.
We do not gather from defendant's testimony pre-
cisely what the proper plan would be for chocking un-
der such circumstances. Some witnesses said one
thing, some another. But there was emphatic and be-
lievable testimony that the plan adopted by plaintiff
was a usual and reasonably safe plan if the track was
in order. Plaintiff had little or no experience in
chocking cars, in fact was a carpenter and not a rail-
road man. To sum up the matter, allowing to defend-
ant the most favorable view possible it cannot be said
on this record that it made a case of a negligent use
of the bar *as a matter of law.* The most that can be
said for defendant is this: it succeeded in getting in
testimony that made the question of plaintiff's negli-
gence one of fact for the jury. The testimony, how-
ever, strongly preponderated in favor of plaintiff on
the issue of his own negligence.

Turning to another issue, to-wit, whether defend-
ant itself was negligent, the record disclosed the fol-
lowing: There was a great deal of proof introduced
by plaintiff tending to show that on the north rail of the
track next to the warehouse, at a point that one set of
trucks would have to cross in moving the car from the
west door of the warehouse to the east door, to-wit,
nineteen feet, there was a low joint that had been
there for several months. Some of the witnesses made
this joint, at the time of the accident, five or six inches
out of surface level. Some much less. The fish plate
or angle bar on one side of the joint was cracked. The
one on the opposite side was a short bar. These bars

were bolted with two bolts instead of the usual number. The tie at the joint was rotten and the two joint ties were unusually wide apart. It was described as a "swinging joint"—that is, a joint whose tie did not rest on a solid foundation but clung to the rail by aid of the spikes and when a car wheel passed over it would give way and spring down. Much the greater weight of the testimony made this joint a very bad one and the rail with a ball battered that would give way under the weight of a heavily loaded moving car. There was also a lip at the joint—i. e., the end of one rail was a little higher than the abutting end of its neighbor. Plaintiff's theory is that the sudden lunge of the car was caused by this low swinging joint and a painstaking study of this record convinces us there was persuasive evidence, and much of it, tending to prove that fact. In fact, defendant's testimony as we read it was not directed to proving the absence of a low joint, nor was it directed to proving that a low joint would not cause a lunge in a moving car, but it was directed to proving that the joint was not as low and bad as plaintiff's evidence indicated. Plaintiff put in testimony tending to prove that the low joint was on the other side of the car from him, in fact was covered by the car, and that he knew nothing about its existence before the accident. No one contradicted him in that particular. Indeed there was no testimony indicating that any of the employees of Davis engaged in moving that car knew of the existence of the bad joint prior to the accident, the car in hand being the first carload Davis had shipped in. (It may be well to say that Davis took the place of one Holland who theretofore represented the brewing company and used the warehouse in question.) There was uncontradicted testimony that a low joint would cause a sudden increase in speed in a moving car—speed of a kind properly characterized as a "lurch" or a "lunge."

There was testimony on behalf of defendant tending to show that it was not customary on all roads to keep their side or spur tracks in as good condition as their main tracks; that the season of 1909 was a wet one; that wet weather conduced to low joints. But all this fell short of showing that the low joint in question was reasonably safe track maintenance in view of the uses the track was put to. There was also testimony tending to show that the men engaged in moving this car were not experienced railroad men. But there is no testimony pointing out that any one of them was negligent in any such designated particular as became a causal factor in the accident. For all that appears they adopted the best plan possible, assuming (as they had the right to) that the track was reasonably safe to move the car by hand power, and carried out the plan free from negligence.

Taking the tendency of plaintiff's proof on the issue of defendant's negligence, and the tendency of defendant's proof on the issue of plaintiff's negligence, and the state of the whole record on the issue whether the negligence of defendant in maintaining its track was a proximate cause of the accident, it is quite out of question that any of them should be decided by the court against plaintiff, as a matter of law. *Contra*, we must hold they were each and all issues of fact to be submitted to the jury to be decided by assigning due weight to the testimony, and reconciling conflicts and contradictions therein, if any, as was done.

Defendant's industrious counsel have searched out and cited many cases. Some of them hold, in effect, that where there are two or more theories for an accident, all equally credible, on some of which defendant may be liable and on others not (and the proof is left so that such equilibrium is undisturbed) then the case resolves itself into the classical predica-

ment of the celebrated ass of Buridan that put itself equidistant between two bundles of equally savory hay, and then (in that logical equipoise) died of starvation because it could not (logically) make up its asinine mind which way to turn and eat—some holding that plaintiff's own negligence barred recovery as a matter of law—some that defendant's negligence was not made out beyond mere suspicion and conjecture, some deal with the negligence of co-employees, others stress the proposition that negligence, to be actionable, must be the proximate cause of the injury —that the concurrence of negligence and injury, absent causal connection, will not do. But, as we see it, none of them apply to the facts of this record.

That low joints are a fruitful cause of railroad accidents and that the negligent maintenance of them is actionable where injury results therefrom to those rightfully using the track, are trite propositions needing no support by citation of cases at this late day.

Accordingly we hold there was no error in refusing defendant's mandatory instruction.

III.  *Of instructions.*

Defendant complains of some given for plaintiff, of some refused for it, and of the alteration of others. Of those in their order.

(a)   Plaintiff's instructions challenged are the first, second and fourth.

The second, on contributory negligence, needs only the attention counsel give it, to-wit, *none.* While counsel condemn it, yet they put their finger on no particular vice. What they could not find with the eyes of their minds sharpened by interest and learning, we have no call to try to be astute to spy out as a court.

(1)   The first instruction reads:

"The court instructs the jury that a person rightfully engaged in unloading beer or other merchandise

from a car, is on the railroad company's premises by
an implied invitation, and has a right to be there; and
that the railroad company owes to such person the le-
gal duty to exercise ordinary and reasonable care to
maintain its side tracks, on and along which cars are
to be moved in doing such work, in a reasonably safe
condition and state of repair for said purpose and
work; and that the defendant company owes this duty
to anyone who is duly employed to do said work and
who is doing the same, when such person so doing the
work has been employed by an owner of or dealer in
beer or other merchandise—regardless of whether he
is in the employ of the defendant railroad company.

"Therefore, if the jury believe from the evidence
that under an agreement with the defendant railroad
company, Dick & Brothers Quincy Brewing Company
kept and maintained a warehouse or cold storage, for
the storage of beer at Trenton, Missouri, and that the
defendant railroad company furnished cars in which
and tracks over which to transport and move said
beer, from Quincy, Illinois, to said warehouse; and
that in the usual course of dealing and business of the
defendant railroad company, cars loaded with beer
were moved and run on to the side track on the south
side of said warehouse; that under an agreement be-
tween himself and said brewing company, Charles
Davis was storing said beer in said warehouse and
selling the same; and that in unloading beer from cars
it is reasonably necessary to move cars on and along
said sidetrack by hand, and man power, immediately
in front of and south of said warehouse, then, it be-
came and was the legal duty of the defendant railroad
company to exercise ordinary and reasonable care
to provide and furnish, at that place, a track in such
a condition and state of repair as to its joints, as to be
reasonably safe for said purposes; and, a failure to
perform this duty, is negligence in law, and, if the jury
further believe from the evidence that the plaintiff,

Thomas Applegate, was in the employ of Charles Davis and acting under the orders of his representative, and engaged, along with others, in moving one of said cars from one door to another of said warehouse to be unloaded; and that defendant's side track, at that place, had 'low joints' in it and by reason thereof was defective and not reasonably safe for said purpose and work; and that defendant acting through its officers, servants and agents, either knew of said condition of said track, or might have known of it by the exercise of ordinary care and diligence; and that defendant negligently permitted said track to remain in said condition; and that plaintiff did not know of said condition; and that plaintiff was engaged in 'blocking' said car with an iron bar while the brake was loosened by Ora Davis so as to permit the car to move slowly of its own weight; and while Ora Davis was trying to hold said car with said brake; and, that by reason of said defective condition of said track; and, while the plaintiff was in the exercise of ordinary care, said car gave a sudden lurch and plunge to the east and caught the plaintiff's leg between said bar and rail and crushed it so that amputation was necessary, then, the plaintiff is entitled to recover and your verdict must be in his favor.''

The foregoing instruction is not criticized (hence needs no defense) except from one viewpoint, to-wit:

Counsel say the petition specified the **Specified Acts of Negligence.** plan plaintiff adopted to chock the car; that the instruction departs from the petition in not specifying the plan, viz: ''by placing the end of a heavy iron bar between the rail and wheel;'' that the instruction merely puts it to the jury to find that plaintiff was ''in the exercise of ordinary care.'' The conclusion is that there is an improper substitution of ''ordinary care'' for the petition plan of chocking the car. Something is said about a ''roving commission to the jury to go outside the pleadings

and evidence in making up their verdict.'' But the sum of it all is that the instruction is said to be faulty in the above particular and not otherwise. Counsel rely on cases like the Waldhier case, 71 Mo. 514; the Schneider case, 75 Mo. 295; the Watson case, 133 Mo. 246; the McCarty case, 144 Mo. 397; the McManamee case, 135 Mo. 440; the Fulwider case, 216 Mo. 582. All of those cases announce this doctrine: That where plaintiff alleges general negligence and follows that general allegation with specifications of negligence or where he alleges specified negligence without a general charge, then he is confined in his proof and instructions to negligence in the very particulars specified and may not recover on general negligence. Counsel concede that such is the gist of those cases, but they argue that the rule ought to be extended so as to confine plaintiff to a specification of the identical plan he adopted for doing the work he was engaged in when he was hurt.

But we may not write the law as we are asked to— because:

The burden was on defendant to make out its defense of contributory negligence. Plaintiff, however, assumed the burden in this instance of writing into his instruction his duty to exercise due care. Now, due care, after all, was the touchstone, the ultimate standard whereby the jury should measure plaintiff's duty. Mark, when defendant asked a mandatory instruction, that request was equivalent to a challenge of the plan plaintiff alleged and testified he adopted. When the court overruled the mandatory instruction, as it did, and when we sustained the court in that ruling, as we did, that is equivalent to saying that the plan plaintiff says he used was not *per se* negligent.

Furthermore, the instruction does put it to the jury to find whether ''plaintiff was engaged in 'blocking' the said car with an iron bar,'' etc. That sufficiently identifies the transaction with the plan pleaded,

and then puts it to them to find whether he was "in the exercise of ordinary care." So that under the given instruction the jury were either obliged to find that the use of the plan was due care or find for defendant on the theory it was not due care. We cannot conceive how defendant could be injured by that instruction.

We are cited to no authority, and we believe there is no well reasoned one that applies the doctrine of the Waldhier and other cases cited in the way and for the purpose suggested by counsel. It seems to us that to do so would be but to weave a net of artificial refinements and subtle technicalities in which to catch an unwary litigant, without subserving any useful end. The point is disallowed to defendant.

(2) The fourth instruction tells the jury, in effect, that if they found defendant was negligent as set forth in instruction number one and that the plaintiff Applegate was exercising due care himself, then, if the negligence of defendant combined and united with the negligence of some one else to cause the injury, if they found that to be the fact, it would not defeat recovery. The giving of that instruction is assigned as error. We are cited to no authority for that assignment, and know of none, under such a record as we have here.

*Negligence Combining With Negligence of Others.*

It is a hornbook doctrine of the law of torts that if B, C and D unite in negligently (or willfully) injuring A, A may recover against all or any one of them. If he sue B, B may not defend on the theory C or D or both contributed. The same principle applies where some form of *vis major,* or other independent instrumentality aids the event. [Bassett v. St. Joseph, 53 Mo. 290; Benton v. St. Louis, 248 Mo. 98, and cases cited; Brennan v. St. Louis, 92 Mo. 482; Straub v. St. Louis, 175 Mo. 413; Zeis v. Brewing

Ass'n, 205 Mo. 638; Westervelt v. Transit Co., 222 Mo. l. c. 344.]

In passing on this instruction it must not be overlooked that defendant affirmatively pleaded by way of defense that plaintiff's injuries were due to other persons not in its employ. It tried its case partly on that theory, laying stress on the way Ora Davis knocked the dog loose from the ratchet wheel and handled the brake at that time. Under such circumstances we think it well enough.

Ignoring issues.  (b)  It is next argued that there was error in refusing instructions for defendant.

The main contention in this behalf arises on one of them reading as follows:

"If the jury believe from all the evidence in the case that the plaintiff received his injuries because of the carelessness of himself and others working with him your verdict must be for the defendant."

Clearly that instruction was not the law of this case. It ignores entirely the main issue, viz.: the negligence of defendant. In so far as it connects plaintiff with his own injuries it was fully covered by an instruction on contributory negligence. In so far as it connects the conduct of other workmen with plaintiff's injuries it had nothing to do with the case, provided defendant was negligent and that negligence was a causal factor in plaintiff's injury, and provided further plaintiff was himself not negligent.

Two of the other three refused instructions were those in which the court interlined "negligently or knowingly" and are dealt with in the next paragraph. The other declared as a matter of law, in effect, that defendant owed no duty in connection with the maintenance of the team track, that is, it performed its full duty when it spotted the car in front of the warehouse. That theory of the case is considered heretofore.

(c)  It is next argued there was error in insert-

ing in some of defendant's instructions the words "knowingly or negligently." The court so modified two of defendant's instructions over its objections and gave them as modified. One of them will do for both, thus:

*Inserting Words "Knowingly or Negligently."*

"The court instructs the jury that if plaintiff *knowingly and negligently* chose an unsafe way of doing what he undertook to do when there was a safe way open to him the verdict must be for the defendant even though you should believe his reason for taking the unsafe way was his inexperience or ignorance."

The choosing of an unsafe way was but a *form* of negligence, whatever its cause, and harks back to the plea of contributory negligence. [Brady v. Railroad, 206 Mo. l. c. 530.] The possible "unsafe way" was the selection and use of a pinch bar to chock the car in the way plaintiff and his witnesses said he used it. If that was not a negligent way, then its choice was not negligently made. If it was negligently made then it was so because the choice was a negligent choice. The thing is as broad as it is long and means the same either way. The phrase, "or knowingly," merely clogged plaintiff's case. It did no harm to defendant. The only virtue in inexperience and ignorance, as a defense, is that an inexperienced or ignorant man is more likely to act negligently—that is, fall below the standard or *norm* of conduct of an ordinarily prudent man acting under the same or similar circumstances. Such is the canonized and sensible definition of *due care*; and, in the law of negligence, every one is held to it, whether he be wise or unwise, learned or ignorant, inexperienced or expert.

"If a man," says Justice HOLMES, "is born hasty and awkward, is always having accidents and hurting himself or his neighbors, no doubt his congenital defects will be allowed for in the court of Heaven, but his slips are no less troublesome to his neighbors than

Applegate v. Railroad.

if they sprang from guilty neglect. His neighbors accordingly require him, at his proper peril, to come up to their standard, and the courts which they establish decline to take his personal equation into account." [Holmes's Common Law, p. 108.] Verily, *Due Care* is the Procrustean bed of the law all must lie on, *nolens volens*.

IV. *Of an excessive verdict.*

Plaintiff, aged fifty-three years, made a living by doing odd jobs of carpenter work, earning thereby twenty-five dollars to forty dollars per month. As said, his right foot was amputated above the ankle. There were no complications and no other injuries. The doctor performing the operation said that $200 would be a reasonable charge for it and the resulting attention. In this form of action where compensation and not smart money is the measure of damages, this court had insisted on conservative recompense and has noticed and disapproved a tendency to go beyond that. [Neff v. Cameron, 213 Mo. l. c. 366 et seq.] All the cases lay stress on the presence of the following elements: age, earning capacity, the extent and nature of the injury and suffering, time lost and complications that arise. In some cases where verdicts are large the court has looked closely to incidents of the trial not arising, may be, to the dignity of reversible error, but naturally registering a result in swollen damages. [Bragg v. Railroad, 192 Mo. l. c. 365-6.] In the Devoy case, 192 Mo. 197, and in the Chitty case, 166 Mo. 435, lists of such cases were considered and briefly analyzed. Those lists and analyses may be of some value, but furnish no definite rule for determining the vexed question.

The sum of the matter is that each case is to be determined on its own facts. Cases are cited by plaintiff's industrious counsel wherein we have allowed verdicts of $10,000 for the loss of a foot and part of a

leg to stand, but it will be found they laid stress on age, earning capacity, time lost, surgical complications, and other injuries. In most of them, it will be found that the trial was free from untoward incidents likely to inflame the jury. In the case at bar there were unhappy incidents of that character. In justice to counsel for plaintiff it must be said they were not wholly to blame for some of them, but in others we cannot say quite so much. It would be unprofitable to blazon forth the details of those incidents and embalm them permanently here.

In Lessenden v. Railroad, 238 Mo. 247, we cut down a $15,000 verdict for the loss of both legs to $10,000, and in that case significance was put on an instruction telling the jury to allow damages not to exceed the amount mentioned in the petition. [P. 264 et seq.] That form of instruction, whilst it has been held not reversible error, has been criticized as a judicial *hint* that the court would approve a verdict in the sum mentioned in the petition. In this case there is an instruction of that character.

The premises considered, we think the verdict excessive in the light of the age, earning capacity and freedom from complications or other injuries, and in the light of improper argument not technically reversible error and of the foregoing instruction. We think the views expressed are sustained by Lessenden v. Railroad, supra; Bragg v. Railroad, supra; Jewell v. Bolt & Nut Company, 245 Mo. 720; Clifton v. Railroad, 232 Mo. 708; Hollenbeck v. Railroad, 141 Mo. 97, and the analyses of cases in Chitty v. Railroad, 166 Mo. 435, and Devoy v. Transit Company, 192 Mo. 197.

If the plaintiff will remit $2500, as of the date of his judgment, within ten days, it will be affirmed for $7500, bearing six per cent interest on that sum from judgment date, otherwise it will be reversed and the cause remanded for a new trial. It is so ordered. All concur.